Filed 2/19/14  P. v. Verduzco CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B243617 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. KA096170) |
| ROBERT JOSEPH VERDUZCO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge.  Affirmed.

Jeffrey Lewis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Tasha G. Timbadia, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

A jury found Robert Joseph Verduzco not guilty of attempted murder and attempted voluntary manslaughter but guilty of aggravated assault. Verduzco's sole contention on appeal is that he was denied the effective assistance of counsel because his attorney failed to request a jury instruction on the defense of accident. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The People's theory of the case was that then-19-year-old Verduzco hit his grandfather, Robert Luna, in the head with an aluminum baseball bat during an argument at the family's home in El Monte and then struck his mother, Yolanda Robledo, in the arm as she blocked Verduzco's attempt to hit Luna with the bat a second (or third) time. Verduzco was charged with attempted willful, deliberate and premeditated murder (Pen. Code, §§ 187, subd. (a), 189, 664) and two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). The information also alleged as to the attempted murder and one of the aggravated assault counts that Verduzco had personally inflicted great bodily injury on Luna. (Pen. Code, § 12022.7, subd. (a).)

1. *The People's Evidence*

Robledo testified she and Verduzco argued on the evening of September 24, 2011 when she told him to be quiet or to speak more softly as he was talking loudly on his cell phone. Robledo explained she was agitated because she was coming down from having used methamphetamine earlier in the day. The two had also argued that morning after Verduzco learned Robledo had been in his bedroom looking for something of value to sell for more drugs. Verduzco became upset, went to his bedroom, picked up an aluminum baseball bat and began banging the bat against the wall.

The People's evidence of what happened next relied primarily upon statements made prior to trial by Robledo, Luna and Nellie Luna, Robledo's grandmother. In a brief initial call to the emergency operator Robledo asked for an ambulance. Calling back several minutes later Robledo told the operator her father "got his head cracked open." The operator asked how it happened, and Robledo responded, "I don't know." The operator told Robledo deputies and paramedics were on their way to her home and asked

2

her to put someone else on who might know what had happened.  Nellie Luna then spoke to the operator and explained that Luna had been asleep, heard a crash and went to see what was going on:  "It was my [great] grandson [Verduzco] getting berserk. . . . [H]itting something, breaking everything, so we tried to stop him from doing that. . . . And he hit my son."  The operator repeated, "He hit your son?"  Nellie Luna responded, "My son—in the head; he's bleeding!"  Nellie Luna described Verduzco as using "like a stick or something" and said, "They were trying to take it away from him because he was breaking the room."  The operator inquired, "[A]nd did he use that to hit your grandson?"  Nellie Luna replied, "Well, I guess he tried to hit anybody who got (indecipherable) . . . ."  Nellie Luna then reported Verduzco had left the home.  At this point police officers arrived, and the operator told her to speak directly to them.

Los Angeles County Sheriff Detective Chris Woodhouse, who responded to the emergency call, testified Robledo told him Verduzco was disrespectful to her after she had asked him to quiet down; her father came out to confront Verduzco; and, at that point, Verduzco "reached into a closet, grabbed a metal bat, and struck him [Luna] to the top of his forehead where he received a laceration just where the hairline meets the forehead."  According to Woodhouse, Robledo also said Luna fell to the floor and, when she saw Verduzco raise the bat a second time, preparing to strike Luna again, "she placed her body between the victim and the defendant and she sustained a blow to, I believe it was her left elbow."

In a handwritten statement given to Los Angeles County Sheriff Detective Stephen Cabrera that evening, Robledo said Verduzco came into the living room waving the bat back and forth, which she felt was taunting her.  "I told him what did he think he was going to do with the bat and he didn't answer.  So he ended up going to his room swinging the bat and hitting the walls on the way to his room.  I heard my dad get up and ask Robert what was wrong . . . .  [R]ight when I got to the hallway, I seen Robert get the bat and hit my dad on the head.  The second hit hit my arm because I got in the way to protect my dad from being hit again."  According to her statements to the officers,

3

Robledo told Verduzco to go to his godfather's to cool off. He did, but returned to the house later to apologize and help Luna by putting ice on his head. However, he fled when he heard sirens approaching the house.

Luna spoke to officers at the emergency room where he was taken after his injury. At that time he reported he had opened the bedroom door and Verduzco hit him on the head with a baseball bat. He then heard someone say, "Hide the bat and run." Luna also gave a written statement to Detective Cabrera approximately two weeks after the incident. He explained he had heard people yelling outside his door while he was sleeping. When he opened the door, Luna saw Nellie Luna and Robledo trying to talk to Verduzco, who was hitting the wall with the bat. "I yelled out, 'What the hell are you doing?' Next thing I knew, I got hit in the head and fell to my knees. I looked up and saw him coming down again. Don't remember that second one. The third, my daughter was trying to protect me up from getting hit again, and she got hit on the arm." At the emergency room Luna received approximately 10 stitches for the injury to his head.

2. *The Defense Version of Luna's Injury*

According to the family's version of events by the time of trial, after Verduzco smashed the wall several times, he and Robledo struggled for control of the bat. Luna was standing behind Robledo during this struggle. When Verduzco unexpectedly released his grip on the bat, Robledo unintentionally pulled it over her right shoulder, striking Luna's head.

In support of the defense version of how Luna was injured, Nellie Luna, Robledo and Luna gave testimony during the People's case that largely contradicted their statements made before trial. Nellie Luna testified she did not see Luna get hit with the bat. Rather, she saw Robledo and Verduzco struggling over the bat and then she saw her son bleeding from a cut to his head.

Luna testified he was taking strong medication at the time and had been asleep. Although he told Detective Cabrera Verduzco had struck him with the bat while they were in the hallway, he was not really sure where he was when he was hit and could not

4

be certain whether Verduzco or Robledo was holding the bat when it struck him. Luna conceded during further questioning that Nellie Luna told him he would have to leave the house if he testified against Verduzco, but Luna asserted he told her he was going to tell the truth.[1]

Robledo testified she and Verduzco struggled over the bat. Verduzco had gotten up on the bed in his room after smashing the wall. She was standing in front of the bed, facing him. Luna was standing behind her. Verduzco suddenly let go of the bat; the force pulled her back and she hit Luna with the bat: "We were struggling for it, but Robert let go. I didn't know he was going to let go. With the force of me pulling it, when he let go, it went back and hit my dad in the head." The blow, she testified, was an accident. Although Robledo acknowledged she had previously told Detectives Cabrera and Woodhouse that Verduzco hit Luna over the head with the bat, she insisted she had simply told the detectives what they wanted to hear because she had an outstanding arrest warrant and did not want them to focus on her. As to any injury of her own, in response to the question, "You didn't get hit with the bat?," Robledo testified, "Probably like during the struggle or something, but I didn't get like literally like hit on purpose or anything."

Verduzco did not testify, and the defense presented no other witnesses.

3. *Jury Instructions*

The court instructed the jury on the presumption of innocence and the definition of reasonable doubt contained in CALJIC No. 2.90. The court gave complete instructions on attempted murder and attempted voluntary manslaughter as a lesser included offense of attempted murder, including instructing the jury that attempted murder and attempted voluntary manslaughter were specific intent crimes. The court instructed that aggravated assault, in contrast, was a general intent crime and explained, "General criminal intent

---

[1] Luna also said, "She's just saying that, but it wasn't a threat. I mean, I didn't take it as a threat. I just took it as conversation. She throws me out every month. Every month she throws me out."

5

does not require an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he [or] she is acting with general criminal intent, even though he [or] she may not know that his [or] her act or conduct is unlawful." (CALJIC No. 3.30.)

The court instructed on assault with a deadly weapon pursuant to CALJIC No. 9.02 and defined the elements of assault, "In order to prove an assault, each of the following elements must be proved: [¶] 1. A person willfully and unlawfully committed an act which by its nature would probably and directly result in the application of physical force on another person; [¶] 2. The person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that physical force would be applied to another person; and [¶] 3. At the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another. [¶] The word 'willfully' means that the person committing the act did so intentionally. However, an assault does not require an intent to cause injury to another person, or an actual awareness of the risk that injury might occur to another person." (CALJIC No. 9.00.)

Verduzco's counsel did not request, and the court did not give sua sponte, CALJIC No. 4.45 (or CALCRIM No. 3404) on "accident" as negating the intent required for any of the crimes charged.

4. *Closing Arguments*

In his closing argument defense counsel insisted, although Luna may have required 10 stitches to stop his bleeding, the injury he suffered was nonetheless relatively minor. (For example, counsel argued there was no indication Luna had suffered a concussion or a hospital stay was required.) He then argued the nature of the injury was "consistent with somebody accidentally or not intentionally striking another individual, as opposed to somebody intentionally striking him because it would be a more severe injury." Pursuing the defense theme of accident, counsel also argued, "[T]here has to be an intent to assault either Yolanda [Robledo] or his grandfather [Luna]. If you don't

6

believe that Mr. Verduzco intended to assault his grandfather, or intended to assault his mother, then he's not guilty of those two counts." Before concluding, defense counsel emphasized the prosecution's obligation to prove the elements of each crime beyond a reasonable doubt and stated if there was any doubt in the jurors' minds as to what Verduzco's intent was at the time the incident occurred, he was entitled to an acquittal: "If you cannot decide on what the facts were, then Mr. Verduzco wins because the burden is on the People to prove their case beyond a reasonable doubt."

For his part, the prosecutor explained the family members had apparently decided they did not want Verduzco punished for the events of September 24, 2011 and had modified their description of the evening to make it appear Luna's injury was inflicted accidentally. In addition to challenging the credibility of the new narratives, the prosecutor emphasized Verduzco had fled when he heard the police sirens and Nellie Luna had attempted to hide the bat. He argued neither action was consistent with Luna having been accidentally struck during a struggle over control of the bat.

5. *Verdict and Sentencing*

The jury found Verduzco not guilty of attempted murder and attempted voluntary manslaughter. It found him guilty of aggravated assault on Luna and found true the special allegation he had personally inflicted great bodily injury. The jury found Verduzco not guilty of assaulting Robledo.

The court sentenced Verduzco to seven years in state prison: the upper term of four years for assault with a deadly weapon plus three years for the great bodily injury enhancement.

**DISCUSSION**

1. *Standard of Review: Ineffective Assistance of Counsel*

The right to counsel guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 15 of the California Constitution "'includes, and indeed presumes, the right to effective counsel . . . .'" (*People v. Blair* (2005) 36 Cal.4th 686, 732.) "'To establish ineffective assistance of counsel under either the federal or

7

state guarantee, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant.'" (*In re Roberts* (2003) 29 Cal.4th 726, 744-745; see *Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2052, 80 L.Ed.2d 674].) "'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof . . . must be a demonstrable reality and not a speculative matter.'" (*People v. Karis* (1988) 46 Cal.3d 612, 656.)

There is a presumption the challenged action or inaction "'"might be considered sound trial strategy"'" under the circumstances. (*Strickland v. Washington, supra,* 466 U.S. at pp. 689, 694; accord, *People v. Carter* (2003) 30 Cal.4th 1166, 1211; *People v. Dennis* (1998) 17 Cal.4th 468, 541.) On a direct appeal a conviction will be reversed for ineffective assistance of counsel only when the record demonstrates there could have been no rational tactical purpose for counsel's challenged act or omission. (*People v. Anderson* (2001) 25 Cal.4th 543, 569; *People v. Lucas* (1995) 12 Cal.4th 415, 442.)

In considering a claim of ineffective assistance of counsel, it is not necessary to determine "'whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" (*In re Fields* (1990) 51 Cal.3d 1063, 1079; accord, *People v. Upsher* (2007) 155 Cal.App.4th 1311, 1325; *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008.) It is not sufficient to show the alleged errors may have had some conceivable effect on the trial's outcome; the defendant must demonstrate a "reasonable probability" that absent the errors the result would have been different. (*People v. Williams* (1997) 16 Cal.4th 153, 215; *People v. Ledesma* (1987) 43 Cal.3d 171, 217-218; see *Mesa*, at p. 1008.)

8

2. *Instructing on the Defense of Accident*

Mirroring the language of Penal Code section 26,[2] CALJIC No. 4.45 states, "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show [no] [neither] [criminal intent [n]or purpose,] [nor] [[criminal] negligence,] [he] [she] does not thereby commit a crime." In simpler and somewhat more direct language, CALCRIM No. 3404 provides in part, "The defendant is not guilty of _____ if (he/she) acted [or failed to act] without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of _____ unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent."

The nature of the defense of accident and the trial court's duty to instruct on that defense were analyzed by the Supreme Court in *People v. Anderson* (2011) 51 Cal.4th 989. Quoting from Professor Paul H. Robinson's treatise, the Court observed that statutory provisions codifying the defense "'have historical significance, [but] are now unnecessary restatements, in a defense format, of the requirements of the definitional elements of an offense. To say that it is a defense that the criminal conduct or omission was committed by a non-negligent accident, is simply to say that all result element offenses [i.e., offenses that require an intent to produce a particular result] require at least proof of negligence as to causing the prohibited result. This is already made clear by the culpability requirements of specific offense definitions . . . .'" (*Id*. at p. 997, quoting 1 Robinson, Criminal Law Defenses (1984) Accident or Misfortune, § 63, p. 269.)

A review of California cases discussing the defense of accident supported Professor Robinson's view. (See *People v. Anderson, supra,* 51 Cal.4th at pp. 997-998.) The Supreme Court explained those decisions had recognized the defense "amounts to a claim that the defendant had acted without forming the mental state necessary to make his or her actions a crime," that is, that "the defense would rebut the prosecution's proof of a

---

[2] Penal Code section 26 provides, "All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] Five—Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence. . . ."

9

mental element of the crime." (*Id.* at p. 997 [internal quotation marks omitted].) Accordingly, the Supreme Court held a trial court has no duty to instruct on accident, sua sponte, when the issue is raised by the evidence: "'"[W]hen a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties. While a court may well have a duty to give a 'pinpoint' instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such 'pinpoint' instructions are not required to be given *sua sponte* and must be given only upon request."'" (*Id.* at pp. 996-997.)

3. *Verduzco Has Failed To Demonstrate Prejudice*

Recognizing the trial court was not obligated to instruct on accident sua sponte, Verduzco contends there was no tactical reason not to request a pinpoint instruction on the key defense theory and his trial counsel's failure to do so fell below an objective standard of reasonableness under prevailing professional norms. Even if Verduzco is correct, his ineffective assistance of counsel claim must be rejected because he has failed to demonstrate a reasonable probability the outcome of his trial would have been different absent that error.

As discussed, the trial court properly instructed the jury that to find Verduzco guilty of assaulting Luna the People had the burden of proving he had willfully committed an act (that is, swinging the bat) that would directly result in the application of physical force on another person. The court also instructed, "The word 'willfully' means that the person committing the act did so intentionally." Moreover, defense counsel's closing argument—given after the trial court had fully instructed the jury—repeatedly directed the jury's attention to the evidence Verduzco lacked the intent required for any of the crimes charged, focusing on Robledo's testimony that she and Verduzco had struggled for control of the bat and that she had unintentionally hit Luna when she pulled the bat over her shoulder after Verduzco released his grip on it. Under these

10

circumstances it is not reasonably probable a pinpoint instruction on accident, even if proper, would have changed the outcome of the trial.

In *People v. Hartsch* (2010) 49 Cal.4th 472, 504, the Supreme Court considered the effect of the trial court's rejection of a pinpoint instruction on third party culpability, which stated, "'Evidence has been presented during the course of this trial indicating or tending to prove that someone other than the defendant committed, or may have had a motive and opportunity to commit, the offense(s) charged. . . . If after consideration of all of the evidence presented, you have a reasonable doubt that the defendant committed the offense(s) charged, you must give the defendant the benefit of the doubt and find him not guilty.'" The Court held, even if error, omission of this instruction "could not have affected the verdict." "[D]efendant's proposed instruction . . . simply restated the reasonable doubt standard in connection with the possibility that one or more others might be guilty parties. . . . It is hardly a difficult concept for the jury to grasp that acquittal is required if there is reasonable doubt as to whether someone else committed the charged crimes. The closing arguments focused the jury's attention on that point." (*Ibid.*; accord, *People v. Ledesma* (2006) 39 Cal.4th 641, 720-721[error in failing to give arguably appropriate pinpoint instruction on third party culpability was harmless].)

Similarly here, the omission of an instruction on accident, in light of the other instructions given and counsel's closing argument, could not have affected the verdict. The jury was told it had to find Verduzco not guilty of aggravated assault unless it was convinced beyond a reasonable doubt he had acted willfully in striking Luna with the bat. It was not a difficult concept to grasp that acquittal was required if there was reasonable doubt on that point—indeed, the jury found Verduzco not guilty on all three other counts, which similarly required evaluation of his intent. To have added Verduzco did not commit a crime if Luna was struck through misfortune or accident would not have changed the result.

11

## DISPOSITION

The judgment is affirmed.


PERLUSS, P. J.

We concur:


WOODS, J.


SEGAL, J.[*]

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.